| | |
|---|---|
| In Re: | CASE NO. 13-33387-DOF |
| ABEER OF FLINT, INC. | CHAPTER 11 |
| Debtor | JUDGE DANIEL S. OPPERMAN |

_____

# Debtor in Possession Abeer of Flint, Inc.'s Fourth Amended Combined Plan and Disclosure Statement

Debtor in Possession Abeer of Flint, Inc., by its attorney, Jeffrey A. Chimovitz, tenders the following, as Abeer of Flint, Inc.'s [Fourth] Amended Combined Plan and Disclosure Statement:

## The Plan of Reorganization

### ARTICLE 1- PURPOSE OF PLAN AND DISCLOSURE STATEMENT

3. Abeer of Flint, Inc. is proposing and tendering this Plan of Reorganization to complete its reorganization under Chapter 11. In order to do so, it must obtain an Order Confirming [this] Plan of Reorganization.

This document has two parts. First, it is a Plan of Reorganization, which describes how the rights of creditors and Abeer of Flint, Inc. will be changed. Second, it is a Disclosure Statement, which presents information regarding the Debtor and its proposed Plan. The Bankruptcy Court has determined that the Disclosure Statement contains information which is adequate to permit creditors to make an informed decision regarding their vote and their rights under the Plan.

The information relied upon in this Plan and Disclosure Statement includes the following:

a) The initial and amended Schedules and Statement of Financial Affairs filed by Abeer of Flint, Inc.

b) Monthly Operating Reports filed by Chapter 11 Debtor in Possession Abeer of Flint, Inc., through July, 2014.

c) Documents filed in this Chapter 11 case.

## ARTICLE II-DEFINITIONS

1. "Administrative Expenses" shall mean any post-petition obligation of Abeer of Flint, Inc. as described under 11 U.S.C. § 503(b) which has been allowed by the Court and any obligation as described under 11 U.S.C. § 502(b) (I) (A), whether or not allowed by the Court, which is not disputed.

2. "Claim" shall mean a claim for which a proof of claim has been filed with the Court on a timely basis or which has been scheduled by the Debtor as not disputed, not contingent, or not unliquidated and where no objection to the Claim has been allowed

Page 3

13-33387-dof    Doc 97    Filed 08/19/14    Entered 08/19/14 14:05:52    Page 2 of 19

by the order of the Bankruptcy Court. A claim shall not include any Administrative Expense. "Code" shall mean the Bankruptcy Code of 1978, as amended, and cited as Title 11 of the United States Code, as amended.

1. "Confirmation Date" shall mean the date upon which the Court enters an order confirming the Plan of Reorganization for the debtor. For purposes of the Plan, the Confirmation Date is estimated to be Wednesday, October 15, 2014.

2. "Court" shall mean the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, at Flint.

3. "Debtor" shall mean Abeer of Flint, Inc.

4. "Effective Date" shall mean a date that is forty-five (45) days after the Court enters an order confirming the Debtor's Plan of Reorganization.

5. "Plan" shall mean this Combined Plan of Reorganization and Disclosure Statement.

6. Undefined terms used in this Plan shall have the meaning given to them by the Code.

## Article III–Plan of Reorganization

### A. Summary of the Debtor's Plan

The Debtor will pay amounts from its post-petition and post confirmation income from all sources, as is discussed in more detail below. Those tendered amounts will be distributed among parties in interest, in accordance with 11 U.S.C. § 507.

## B. Classification and Treatment of Administrative Expenses and Claims

Class 1- United States Trustee's Office -Quarterly Fees

Abeer of Flint, Inc. believes that quarterly fees owed to The United States Trustee's Office are fully paid. Any such fees accrued but unpaid to the United States Trustee's Office must be paid before the Confirmation Date. **Debtor acknowledges the treatment of the United States Trustee's Office's Quarterly Fees under § 503(b)**

**Class 1 is unimpaired.**

Class 2- Administrative Expenses for Professional Services.

Jeffrey A. Chimovitz as the Debtor in Possession's § 327 (a) Attorney has agreed to receive his respective fees, when those fees are allowed by this Court, in installments during a period that extends beyond the Plan's Effective Date.

**Jeffrey A. Chimovitz's Administrative Expense Claim is impaired**.

MCLR Tax Center has served as Debtor in Possession's § 327 (a) Accountant. MCLR Tax Center has **not** agreed to receive any portion of its allowed fees beyond the Plan's Effective Date. Accordingly, MCLR Tax Center's Administrative Expense Claim is unimpaired.

Class 3. § 1129 (a) (9) (C) Claims.

Taxes owed to the IRS and the Michigan Department of Treasury are accorded 8th Priority status by 11 U.S.C. § 507 (a) (8).

Reorganized Debtor will pay those claims in conformance with the requirements set out in Bankruptcy Code § 1129 (a) (9) (C). **Class 4 is impaired.**

Class 4. **St. Botros, LTD. as the Landlord regarding lease with Option to Purchase**

Debtor in Possession in possession has a current lease (with option to purchase) with Landlord St. Botros, LTD. Debtor in Possession will continue to make regular $2,000 a month payments to St. Botros, LTD. under that lease. Debtor in Possession contemplates that it will exercise its Option to Purchase with the next 3 years.

Class 4 is **impaired**

**Class 5. Contended Secured claims:**

The following secured claims had respective junior mortgages regarding the building and land at 3280 Lippincott Blvd. Burton, Michigan 48519. Those junior mortgages were foreclosed and were lost when Hantz Bank foreclosed its senior mortgage in 2012. St Boutros LTD was assigned the resulting title to the previously encumbered real estate. The Article Nine Security Interests of each in Abeer of Flint, Inc.'s personal property was unaffected by and survived that Real Property Mortgage Foreclosure Sale.

Class 5A. Issa and Georgette Yacoub.

Issa and Georgette Yacoub were granted an Article Nine Security Interest in August, 2008, to secure a specific, June 18, 2008 $50,000 promissory note. Abeer of Flint, Inc. contends that it fully paid that $50,000 promissory note and accrued interest on it, by installment and other payments before 2013.

Abeer of Flint, Inc. acknowledges that it also borrowed $30,000 at a later time from Issa Yacoub on an unsecured basis. Abeer of Flint, Inc. proposes to pay the remaining unpaid $13,000 balance on the later loan as a Class 6 [unsecured, non-priority] claim.

Class 5B. Metro Community Development, Inc.

Metro Community Development, Inc. holds an Article Nine Security Interest in all of Abeer of Flint, Inc.'s personal property under a Security Agreement and perfected Financing

Statement filed before December 21, 2013 [the date that Abeer of Flint, Inc. granted a junior Article Nine Security Interest to Salim Rashmawi].

Abeer of Flint, Inc. proposes to pay Metro Community Development, Inc.'s remaining unpaid $20,826.65 balance in equal monthly installments of $500 each until it is paid in full. Metro Community Development, Inc.'s security interest shall remain in place against Abeer of Flint, Inc.'s personal property and land contract buyer Hanna of Flint, Inc.'s purchaser's interest shall be subject to that security interest.

**Metro Community Development, Inc.'s Class 5B claim is impaired**

Class 5C. Salim Rashmawi.

Salim Rashmawi's Proof of Claim contends that it is a $158,544.64 secured claim, through a perfected security interest in Abeer of Flint, Inc.'s personal property, arising out of a December 21, 2012 promissory note and accompanying Security Agreement.

Abeer of Flint, Inc. contends that Salim Rashmawi is owed less than $85,000 and that Salim Rashmawi's contended security interest is void.

Abeer of Flint, Inc. proposes to litigate the extent and validity of Salim Rashmawi's claim in this Court, through a Bankruptcy Code disputed claim determination. $ 1,000 of Hanna of Flint, Inc.'s monthly installment payments on its land contract with Abeer of Flint, Inc. shall be escrowed with the Clerk of the Bankruptcy Court, until the amount and secured status of Salim Rashmawi's claim is determined. Thereafter, the escrowed funds will be turned over to Salim Rashmawi or will be distributed in pari pasu to the Class 6 Creditors, according to this Court's Order in that claim determination Adversary Proceeding.

**Salim Rashmawi's Class 5C claim is impaired**.

Class 6. Unsecured, Non-priority Claims

Class 6 is composed of 17 claims, totally $65,378.28.

Reorganized Debtor Abeer of Flint, Inc. will fully pay the holders of allowed Unsecured, Non-priority Claims a "pool" total of $52,378.28, payable in 12 quarterly installments of $4,364.85 each, beginning 180 days after the Plan's Effective Date. Those quarterly installments will be distributed pro-rata among the allowed Class 6 claims. **Class 6 is impaired.**

Class 7. Shareholder Amjad Abu Saada.

Abeer of Flint, Inc. proposes that Amjad Abu Saada will retain his sole shareholder's interest in the Reorganized Debtor, junior to all senior classes' completed Plan distribution payments. **Class 6 is impaired.**

# Article II
# Description of the Debtor

A. Abeer of Flint, Inc. is a Michigan business corporation.

B. Abeer of Flint, Inc.'s sole shareholder, director, and officer is Amjad Abu Saada. He is a 55 year old man, who was born in Bethlehem, Israel-Palestine. He immigrated to the United States in 1997 and in 2002, started H & N Market.

Mr. Abu Saada received less than $27,000 for each of the years 2012 and 2013, in total salary, draws, and other remuneration.

Mr. Abu Saada was a guarantor of Debtor regarding the underlying business loan and mortgage [The creditor's interest was subsequently sold to St. Boutros].

Mr. Abu Saada was not a lessor or lessee of Debtor regarding Debtor's business premises or personal property.

Page 8
13-33387-dof    Doc 97    Filed 08/19/14    Entered 08/19/14 14:05:52    Page 7 of 19

Mr. Abu Saada was not a debtor of Debtor. Any advances that Mr. Abu Saada made to Debtor are being treated, for purposes of this Amended Combined Plan and Disclosure Statement, as capital contributions by a shareholder.

C. Abeer of Flint, Inc.'s principal business is providing customary convenience store products and services to the adjacent physical neighborhood (which includes a low-income multiple Rental Unit complex). Its customers largely rely on being able to walk to Abeer of Flint, Inc.'s store to obtain their grocery and other goods. Abeer of Flint, Inc.'s inventory includes beer, wine, tobacco products, Lottery tickets, etc.

The present cash crisis that precipitated Abeer of Flint, Inc.'s decision to seek Chapter 11's protection stems from Amjad Abu Saada's ill-fated attempt between 2009 and 2011 to invest in a convenience store located at 241 W. Carpenter Road, In Flint's far Northwest side. Over $89,000 of Abeer of Flint, Inc.'s working capital was devoted to that other location.

As a result, Abeer of Flint, Inc. was unable to adequately restock inventory when its own sales took inventory down. Exacerbating its cash flow problem, three employees were found to be stealing from the business. When Consumers Energy moved to cut off utility service due to delinquent bills, Abeer of Flint, Inc. was forced to file this Chapter 11 case on October 4, 2014.

# Article III.
# Post-petition events of significance

A. There were no post-petition transfers outside of the ordinary course of business.

B. There were no cash collateral or post-petition financing activities or any adequate protection events.

C.  Abeer of Flint, Inc. filed and served an Adversary Proceeding against Consumers Energy for $16,000 in preferential payments made in the 90 days before Abeer of Flint, Inc.'s October 4, 2013 Filing Date. Consumers Energy and Debtor in Possession have tentatively agreed to a settlement in which Consumers Energy will credit some of the pre-petition payments against post-petition services and Debtor in Possession will pay the remaining post-petition balance in the ordinary course of business.

Abeer of Flint, Inc. has filed an Adversary Proceeding against Hantz Bank, to recover losses and consequential damages arising from two loss incidents and Hantz Bank's refusal to pay Abeer of Flint, Inc. Proof of Loss. Defendant Hantz Bank has filed its answer to that Adversary Proceeding complaint. It is too early to determine what the net amount from that suit will be. **However, all net proceeds will be devoted to paying Class 2-6's claims.**

# Article IV
# Liquidation Analysis

A. Liquidation Analysis:

| Asset | fair market value (Going concern and intact) | forced sale value | Encumbrances | Equity | Comments |
|---|---|---|---|---|---|
| **Trade Fixtures** | 38,000 | 22,800 | | 22,800 | |
| **Inventory** | 18,000 | 6,000 | | 6,000 | |
| **Kitchen equipment** | 3,000 | 500 | | 500 | |
| **SDM License** | 0 | 0 | | 0 | |
| **"Good Will" [going concern value]** | 390,000 * | 0 | | $390,000 | |

**\* the $390,000 figure is based on the Purchase Agreement between Abeer of Flint, Inc. and Hanna of Flint, Inc., above.**

### II. Proceeds of Assets.

| | |
|---|---|
| **Trade fixtures** | **$22,000** |
| **Inventory** | **$6,000** |
| **Kitchen Equipment** | **$500** |
| **SDM License** | **$ 0** |
| **Going concern value** | **$ 0** |
| | |

The likely proceeds of assets in a liquidation scenario would likely be totally consumed by Administrative Expense Claims in the Chapter 11 and subsequent Chapter 7 ( United States Trustee's Office fees, professional fees, post-petition trade and wage payables), leaving no funds available for Class 6 claimants.

The Liquidation Analysis set out above is composed on Management's estimates of what the items would be valued at by bidders buying those assets piecemeal (and moving them to different locations) in a Chapter 7 Case liquidation (forced sale value)**.**

Forced sale value is the price a buyer could purchase a used personal property asset in the same condition as Debtor in Possession's corresponding asset.

The SDM license would have a value that a willing buyer would pay a premium for the accompanying assets to obtain. However, presently, there are more available licenses from the State of Michigan than there are new applications. Accordingly, the value of the SDM license has been placed at "zero."

In the hypothetical Chapter 7 case, the Chapter 7 Trustee's fees and the costs of a liquidation sale, when added to the present Administrative Expense Claims, would degrade the items' value even more.

Basis for setting high "Going Concern Value."

Abeer of Flint, Inc.'s physical proximity to a low-income multiple unit rental complex and residential neighborhood gives its continuing business a significant "going concern value." Based upon the Debtor's pending, arm's-length-sale agreement with Hanna of Flint, Inc., that "going concern value" is valued at $390,000. The "going concern value" will be totally lost at liquidation. In that latter scenario, the tangible assets could be bought at auction by a bulk bid, but Chapter 7 Trustee's fees, auctioneer's commission, sale expenses, etc., would significantly reduce - if not totally consume - the auction proceeds.

None of the Class 6 Claims were guaranteed by anyone or are jointly owed by anyone other than Debtor.

# Article V.
# Details regarding implementation of the plan

A.  Abeer of Flint, Inc.'s pre-petition operating results were significantly degraded by the lack of sufficient working capital (due to the W. Carpenter Road losses). That lack of working capital reduced the amount of inventory that Abeer of Flint, Inc. could stock, which resulted in degraded revenues and even less working capital. That shortage of working capital hampered the first months' revenue after Abeer of Flint, Inc.'s October 4, 2013 Filing Date.

Abeer of Flint, Inc. and Hanna of Flint, Inc., an unaffiliated Michigan business corporation whose sole shareholder and president is Edward Hanna [who is also not an affiliate of Debtor], have signed preliminary documents to sell Abeer of Flint, Inc.'s business, assets, and

good will to Hanna of Flint, Inc. **Those tentative agreements are each expressly subject to the approval of this Court.** The portions of those agreements dealing with "Liquor inventory" are also expressly subject to Michigan Liquor Control Commission's approval.

Management calculated the required amounts of monthly payments to Abeer of Flint, Inc. under the Participation and Management Agreement and the Purchase Agreement (collectively, the "Agreements") sufficient to make payments of the Class 2-6 claims over the contemplated 3 year period feasible.

B. Amjad Abu Saada will subordinate any claims or participation [as a claimant or as a shareholder] in the Purchase Agreement proceeds, to the payment of those Class 2-6 Claims.

C. The tax implications from the Chapter 11 Plan to Abeer of Flint, Inc. - per se- are negligible, because the Plan does not trigger forgiveness of indebtedness income, under Internal Revenue Code § 109. Any gain recognized from the Purchase Agreement may be offset by Net Operating Loss Carry forwards.

# Article VI.
# Legal Requirements

A. Voting Procedures

Under the Bankruptcy Code, only classes of claims against or equity interests in a debtor that are impaired under a plan are entitled to vote to accept or reject a plan.

Accordingly, classes of claims or interest that are not impaired are not entitled to vote on the Plan.

Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such creditors will receive a separate ballot for all of their claims.in each class (in accordance with the records of the clerk) and should complete and sign each

ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots, may photocopy the ballot received a file multiple ballots.

Votes on the plan will be counted only with respect to claims (a) that are listed on the debtor's Schedules of Assets and Liabilities other than as disputed, contingent or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of claims (except for certain claims expressly excluded from that bar date or which are allowed by court order). However, any vote by a holder of a claim shall not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to Bankruptcy Code § 502 and F.R. Bankr P. 3018.

Voting on the plan by each holder of a claim in an impaired class is important.

After carefully reviewing the plan and this disclosure statement, please indicate your vote on each enclosed ballot and return it to the address provided in the order of the Court which accompanies this document.

Any ballot that does not appropriately indicate acceptance or rejection of the plan will be disregarded.

In order to be counted, ballots must be marked, signed and returned so that they are received no later than 4:00 p.m. (Eastern Time) on the date fixed in the accompanying order of the Court.

B. Acceptance.

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by holders of at least 2/3rds in dollar amount and more than one-half in number, of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least 2/3rds in number of the equity interests of that class that actually cast ballots.

Confirmation

Other conditions to confirmation of a plan can be found in § 1129 of the Bankruptcy Code and are too numerous and detailed to be fully explained in this document. Moreover, Chapter 11 reorganization is complex and the rights of creditors and other interested parties should be specifically and more fully explained by independent counsel.

Confirmation of a Plan requires that at least one class of impaired claims or interests accepts the plan.

Effective Date.

Debtor in Possession Abeer of Flint, Inc. proposes that the effective date of the Plan will be 45 days after the date that the Plan is confirmed.

Dated: August 19, 2014

*/s/ Jeffrey A. Chimovitz*
Jeffrey A. Chimovitz (P 11840)
7550 S. Saginaw Street, Suite 6
Grand Blanc, Michigan 48439
(810) 238.9615
jeffchimovitz@gmail.com
Attorney for Abeer of Flint, Inc.

Exhibit A. Template Requested Order

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION- FLINT

In Re:  CASE NO. 13-33387-DOF

ABEER OF FLINT, INC.  CHAPTER 11

JUDGE DANIEL S. OPPERMAN

Debtor
_____

**ORDER GRANTING PRELIMINARY APPROVAL OF THE
DISCLOSURE STATEMENT AND SCHEDULING CONFIRMATION HEARING**

The Debtor has filed a combined disclosure statement and plan. The Court has reviewed the disclosure statement and has decided to grant it preliminary approval.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT** the disclosure statement is granted preliminary approval, subject to any timely and proper objections.

IT IS FURTHER ORDERED that the Debtor shall within 7 days arrange for service by mail in accordance with L.B.R. 3018-1(a) (E.D.M.).

IT IS FURTHER ORDERED that for that purpose the Debtor shall use an updated copy of the matrix, available from the Clerk, and the Debtor shall file with the Court as promptly as possible a Certificate of Service which shall set forth to whom notice has been given.

The deadline to return ballots on the plan, as well as to file objections to final approval of the disclosure statement and objections to confirmation of the plan, is _____. The completed ballot form shall be returned by mail to the Debtor's or plan proponent's attorney: [Name, Address, City, State, Zip].

The hearing on objections to final approval of the disclosure statement and confirmation of the plan shall be held on at _____ a.m./p.m., in the U.S. Bankruptcy Court, [insert location- Flint or Bay City].

The deadline for all professionals to file final fee applications is _____.

**Exhibit B. Financial Information**

# Scheduled Uses of Land Contract Payments from Hanna of Flint, Inc.

$5,000 a month from Hanna of Flint, Inc.

1. $2,000 a month to St. Boutros Ltd.

2. $500 a month to Metro Community Development, Inc., until paid in full.

3. $1,000 to United States Bankruptcy Court in Escrow for Salim Rashmawi.

4. $750 a month to State of Michigan and IRS, until paid in full.

5. $750 to Class 6 Claims, plus additional amounts after all senior classes are satisfied, until paid in full.